# Bartholomew's Appeal.

1. A testator by his will gave "to my sons John (and three others) each an equal share of the balance of my estate," &c. By a codicil he provided : " and whereas in my said will I have given unto my son John, an equal share of all my net estate, real and personal, with my other children, I do hereby declare that my will is that the said legacy or equal share be paid by my executors unto my daughter-in-law, Martha, the wife of my said son, John Bartholomew, Jr., her heirs and assigns, at the time distribution is made to my other heirs, and I do hereby ratify and confirm my said will in all other respects." *Held*, the codicil revoked the bequest to John.

2. The codicil was not a substitution by which Martha became substituted for John by operation of law.

3. John was indebted to the testator, Martha took the full share not subject to his debts.

4. The codicil produced the same result as if John had not been mentioned. Per BUTLER, P. J.

5. Where the language in a will is plain, the intention is to be gathered from the language. *Id.*

January 21st 1874. Before AGNEW, C. J., MERCUR and GORDON, JJ. SHARSWOOD, J., at Nisi Prius.

Appeal from the Orphans' Court of *Chester county :* No. 190, to January Term 1874. In the distribution of the estate of John Bartholomew, deceased.

John Bartholomew, the decedent, died May 11th 1871, having made a will dated September 12th 1870, and a codicil dated May 2d 1870. Letters testamentary were granted June 2d 1871 to Benjamin Bartholomew, Jonathan Roberts and William L. Lee, the executors named in the will.

By his will he provided, amongst other things, as follows :—

* * * " I give and bequeath unto my beloved wife Lydia Bartholomew the sum of two hundred dollars, annually to be paid unto her by my executors hereinafter named, in lieu of dower; said executors are hereby empowered to invest safely the sum of $3333.34, out of my estate, the interest arising therefrom to be applied to the payment of the above-mentioned annuity. * * *

" I give and bequeath unto my sons Benjamin Bartholomew and John Bartholomew, Jr., and to my daughters Mary Emily (intermarried with Wallace Henderson), and Lydia Ann (intermarried with William L. Lee), each an equal share of the balance of my estate, after the aforesaid debts and legacies are paid, together with an equal share each of the aforesaid sum of three thousand three hundred and thirty-three dollars and thirty-four cents, after the decease of my said wife Lydia Bartholomew."

The codicil is : " I, John Bartholomew, the within-named testator, do hereby make and publish this codicil to my last will and testament, bearing date the twelfth day of September, A. D. one thousand eight hundred and seventy, in manner and form as follows, to wit: And whereas, in my said last will, I have given and

bequeathed unto my son John Bartholomew, Jr., an equal share of all my net estate, real and personal, with my other children, I do hereby declare that my will is, the said legacy or equal share be paid by my said executors unto my daughter-in-law Martha, the wife of my said son John, her heirs and assigns, at the time distribution is made to my other heirs."

Martha, the wife of John, afterwards died, having made a will, of which W. D. H. Serrill is the executor.

The executors settled their account, showing in their hands a balance of $12,553.54, and D. Smith Talbot, Esq., was appointed auditor to report distribution.

The auditor found that, at the time of the testator's death, his son John was indebted to him in an amount much more than the amount of his share of the balance under the *will* would be.

He further reported:— * * *

"Now what portion of his will did the testator intend to change by his codicil? Evidently only the person who was to receive 'John's share,' instead of 'John' himself. His language is: 'Whereas, I have given and bequeathed unto my son John Bartholomew, Jr., an equal share of all my net estate, real and personal, with my other children, my will is that the said legacy or equal share be paid unto my daughter-in-law, the wife of my son John, her heirs and assigns, &c.' Could he have intended by these words to enlarge the bounty to his daughter-in-law, to bestow upon her, a stranger in blood, double the portion he had given to his own children? By no means; for he says that he had given to his son John 'an equal share with my other children,' and that identical equal share he gives to Martha, the wife of his son. He knew what John's indebtedness to him amounted to; he knew that John's debts must first be paid out of his share, or if he did not know this, the law construes his will to effect this result, and consequently the share of his other three children would be increased by the amount of John's debts to the estate, which would have to be paid before any equalization of his bounty to his four children could be effected.

"The same principle of equalization was evidently in his mind when he executed the codicil, for John was only to have an equal share with his other children, and Martha was to be paid John's share, and he ratified and confirmed his said will in all other respects. If the testator had entirely revoked that portion of his will by which he gave John an equal share with his other children, and had then in his codicil bequeathed to his daughter-in-law absolutely, the fourth part of his residuary estate, there might have been some ground for the construction of the codicil contended for by the wife of John; but the bequest to Martha is restricted by such plain and unmistakable language to the balance due to her husband after payment of his debts, that the auditor can arrive

[Bartholomew's Appeal.]

at no other conclusion than that it was the testator's intention merely to substitute Martha in the place of her husband, without increasing the quantity of his estate to that branch of his heirs.

  &ast;   &ast;   &ast;   &ast;   &ast;

"It appears that John's debts will not only amount to the fourth part of the residuum presently distributable, but also his share of the remainder at the widow's death. No portion of the estate, therefore, can be awarded to Martha Bartholomew, but each of the two funds must be divided into three parts and distributed to the three children above named."

Exceptions to the report of the auditor were filed by the executors, &c., of Martha Bartholomew. They were sustained, Butler, P. J., delivering the following opinion :—

"The testator bequeathed one 'equal share' of the balance of his estate—being one-fourth—to his son John. By a codicil he revoked this bequest, and gave the same 'equal share' to his daughter-in-law, Martha, wife of John. The result of this is the same as if John had not been mentioned. The circumstance that Martha is his wife, and that the bequest was originally to him, is of no importance. If it had remained to him, it would have afforded means for the payment of his debt, and the executors could have applied it by way of set-off. But now that it is hers it cannot be so applied.

"It is said this view will work injustice to the other children, and that the testator cannot therefore have contemplated it. But it is quite as difficult to believe that when he gave Martha this legacy, he contemplated that it should be applied to somebody else's debt, and she get nothing. It is supposed he intended to give her what John would have received on settlement with the executors. But he does not say so. On the contrary, he designates the proportion she is to have, to wit: 'one equal share' with Benjamin, Mary and Lydia. This may or may not be the same that John would have received on settlement. If he had previously paid the debt, or the statute of limitation or presumption of payment had run against it, he would have received the same ; otherwise he would have received nothing. But in either case he would have gotten the entire legacy—the one-fourth. For whether the debt be paid from the legacy or from some other source, the result is the same to him. If we adopt the auditor's view, John will still get the legacy, notwithstanding the testator's change of mind. It will discharge his indebtedness, and the property he may acquire hereafter will be at his own disposal. The claim of the executors will be extinguished with the wife's legacy, and no matter what his means may be, she will get nothing. If he possessed property at this time it would not be pretended that the debt should be paid from her legacy. How can the circumstance that he does not, affect her rights?

"The auditor's error grows out of the supposition that the be-quest to John was simply of the balance, after deducting his indebtedness; and that it is this balance which is given to Martha. This, as we have seen, is a mistake in both respects. The bequest to John was of the one-fourth—'one equal share'—with Benjamin, Mary and Lydia, of the balance of estate. What is the balance of estate? Clearly what remains of available assets after paying debts, and the legacies previously mentioned. The worthless debts of an insolvent obligor do not enter into it, whether he be a son of the testator or a stranger. If the bequest had remained to John then his indebtedness to the estate would have been available and have entered into the 'balance.' And, as before stated, the debt could have been collected by means of set-off. But this circumstance—that his obligations could have been used in making payment,—does not reduce the amount of the legacy. It would still be the one-fourth of the balance of estate. And it is this one-fourth which is given to her.

"The intentions of a testator are to govern of course. But where the language is plain the intention is to be gathered from it. And here it is plain, designating precisely what proportion of the estate the legatee is to have. We cannot disregard it because we may suppose injustice will result, and that something else must therefore have been intended. Were we to look for the intention here, outside the terms used, we are not sure we would agree with the auditor. It is said the testator must be presumed to have known the law, the effects of what he did, and that John was thriftless and insolvent. He is quite as likely to have known the extent of his own estate, for it was small. And if he did know these things, then he also knew that his bequest to John would be fruitless; and if he intended Martha to take simply what John would have received on settlement—nothing—he would hardly have troubled himself to change the bequest to her. It might be said, therefore, the fact that he did change it raises an inference that he desired to *avoid* this result, and provided something for the family of this penniless and thriftless son. But we cannot know his secret motives, and while his language is plain, are not at liberty to guess at them.

"And now, to wit, September 29th 1873, the exceptions to the report of the auditor in the matter of the estate of John Bartholomew deceased, having been argued and considered, the court do, for the reasons given in the opinion filed, reverse the report of the auditor so far as to allow W. D. H. Serrill, executor of Martha Bartholomew, deceased, to participate in the distribution of the estate of said deceased, and receive the one-fourth part thereof payable presently, and the one-fourth part thereof payable after the death of the widow, and that the executors of said deceased be

[Bartholomew's Appeal.]

ordered to pay out the balance in their hands according to the annexed amended schedule of distribution." * * *

Benjamin Bartholomew and the other residuary legatees appealed to the Supreme Court, and assigned the decree of the Orphans' Court for error.

*W. M. Hayes*, for appellants.—Equality of disposition by parents to children is to be favored, and doubtful words should be solved to attain it : Horwitz *v.* Norris, 10 P. F. Smith 261 ; Malone *v.* Dobbins, 11 Harris 296.

A knowledge of the circumstances under which a will was made, and the state of a testator's property or family, is of great assistance to the court in the construction of it : Rewalt *v.* Ulrich, 11 Harris 388 ; Earp's Will, 1 Parsons R. 457 ; Postlethwaite's Appeal, 18 P. F. Smith 478.

*W. B. Waddell*, for appellee, was stopped by the court.

The opinion of the court was delivered, January 26th 1874, by

AGNEW, C. J.—We perceive no error in this decree. The bequest to Martha, the wife of John Bartholomew, in the codicil to the testator's will, was evidently a revocation of that to John in the original will. The fact that she is John's wife does not change her right, and make her legacy liable to John's debts to the testator. It is not a case of legal substitution, whereby one person becomes substituted to the right of another by operation of law, but it is a case of change in the intention of the testator, whereby he suffered one person to drop out of his will and another to fall in. The very change of intention contradicts the idea of mere substitution. John was left to stand where he stood before, a debtor to the estate, and Martha was given the bequest in her own right, not in his. Judge Butler's opinion is quite satisfactory.

Decree affirmed and appeal dismissed with costs.